IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
GEOTAG, INC.,                  )
                               )
      Plaintiff,               )
                               )
v.                             )      Case No: 2:13-2030-JPM-tmp
                               )
FRED'S, INC.,                  )
                               )
      Defendant.               )
```

## ORDER GRANTING DEFENDANT'S MOTION TO STAY

Before the Court is Defendant Fred's, Inc.'s ("Defendant" or "Fred's") Motion to Stay filed February 18, 2013. (ECF No. 80.) Plaintiff GeoTag, Inc. ("Plaintiff" or "GeoTag") filed its Response in Opposition on March 7, 2013. (ECF No. 89.) With leave of Court, Defendant filed its Reply in Support of the Motion to Stay on March 25, 2013. (ECF No. 93.) For the following reasons, Defendant's Motion is GRANTED.

## I.   BACKGROUND

This case concerns the alleged infringement of U.S. Patent No. 5,930,474 (the "'474 Patent"). GeoTag filed a Complaint against sole-defendant Circle K Stores, Inc., in the United States District Court for the Eastern District of Texas on September 13, 2011. (ECF No. 1 at 2; see Comp., ECF No. 1, GeoTag, Inc. v. Circle K Stores, Inc., 2:11-cv-00405-MHS (E.D.

Tex. Sept. 13, 2011).)  GeoTag then filed an Amended Complaint,

naming over fifty additional defendants, including Fred's, on

October 25, 2011.  (ECF No. 2; see Am. Comp., ECF No. 10,

GeoTag, Inc., 2:11-cv-00405-MHS (E.D. Tex. Oct. 25, 2011).)

GeoTag claims that Fred's

> has infringed the '474 Patent . . . through actions
> comprising the making, using, selling and/or offering
> for sale in the United States systems and methods
> which comprise associating on-line information with
> geographic areas and which are covered by one or more
> claims of the '474 patent.  On information and belief,
> such systems and methods include the store and/or job
> locator at [Fred's company website and Fred's careers
> website].

(ECF No. 2 ¶ 103.)  The Eastern District of Texas subsequently

severed each defendant into separate cases, pursuant to the

America Invents Act, on August 15, 2012.  (ECF No. 1.)

Thereafter, Fred's filed a Motion to Dismiss for Lack of

Personal Jurisdiction (ECF No. 9) and a Motion to Sever and

Transfer (ECF No. 10) on August 28, 2012.  Fred's contended that

the Eastern District of Texas lacked personal jurisdiction to

hear the claims against Fred's (ECF No. 9), and alternatively,

that the action against Fred's should be transferred pursuant to

28 U.S.C. § 1404(a) to the United States District Court for the

Western District of Tennessee, Fred's principal place of

business.  (ECF No. 10.)  On January 14, 2013, the Eastern

District of Texas granted Fred's Motion for Transfer, and the

2

case was transferred to the Western District of Tennessee.[1]  (ECF No. 70.)

On February 18, 2013, Fred's filed its Answer and Counterclaim to GeoTag's Amended Complaint.  (ECF No. 79.)  Fred's filed the instant Motion to Stay the same day.  (ECF No. 80.)

Fred's moves to stay the instant case pending the outcome of a Declaratory Judgment Action regarding the '474 Patent that is currently pending in the United States District Court for the District of Delaware (the "Delaware action").  (ECF No. 80 at 1); see Microsoft Corp. v. GeoTag, Inc., 1:11-cv-00175-RGA (D. Del. Mar. 1, 2011).  The Delaware action concerns the validity of the '474 Patent.  (ECF No. 80 at 1.)  In the Delaware action, Plaintiffs Microsoft Corporation and Google, Inc., "seek a declaratory judgment that the '474 patent is invalid and is not infringed by the use of Plaintiffs' web mapping services."  (ECF No. 80 at 1-2 (quoting Compl., ECF No. 1, Microsoft Corp., 1:11-cv-00175-RGA (D. Del. Mar. 1, 2011) (internal quotation marks omitted).)

Fred's claims that the Delaware action "involves the real parties in interest concerning GeoTag's patent infringement suits," while the instant case involves "a customer of Google –

---

[1] The Eastern District of Texas transferred the action without deciding Fred's then-pending Motion to Dismiss for lack of personal jurisdiction.  (ECF No. 70 at 1 n.1.)  This Court denied the Motion to Dismiss as moot on March 12, 2013.  (ECF No. 88.)

a provider of the accused technology." (ECF No. 80 at 2.)
Fred's claims that "the Delaware litigation will dispose of
significant issues in the instant case and may even moot the
litigation before this Court entirely." (ECF No. 80-1 at 1-2.)
Fred's also claims that the "first-to-file" rule applies to stay
the instant litigation because the Delaware action was commenced
on March 1, 2011, while GeoTag did not sue Fred's until October
25, 2011. Fred's finally claims that if the "first-to-file"
rule is inapplicable, the "customer-suit exception" to the
"first-to-file" rule applies, which provides that "litigation
against or brought by the manufacturer of infringing goods takes
precedence over a suit by the patent owner against customers of
the manufacturer." (Id. at 2 (quoting Katz v. Lear Siegler,
Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990) (internal quotation
marks omitted).)

## II.   STANDARD OF REVIEW

"The decision whether to grant a stay of a particular
action is within the inherent power of the Court and is
discretionary." Ellis v. Merck & Co., Inc., 06-1005-T/AN, 2006
WL 448694 (W.D. Tenn. Feb. 19, 2006). The court is tasked with
"control[ling] the disposition of the causes on its docket with
economy of time and effort for itself, for counsel, and for
litigants." Gray v. Bush, 628 F.3d 779, 786 (6th Cir. 2010)
(quoting Landis v. North Am. Co., 299 U.S. 248, 254 (1936))

(internal quotation marks omitted). In determining whether to stay patent cases pending the resolution of other matters, courts generally consider: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." <u>Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.</u>, 03-2330 MA/A, 2005 WL 2175436, at *3 (W.D. Tenn. Sept. 1, 2005) (footnote omitted) (quoting <u>Xerox Corp. v. 3Com Corp.</u>, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)) (internal quotation marks omitted).

## III. ANALYSIS

In support of its Motion, Fred's argues that a stay is appropriate, that the first-to-file rule applies, and that, alternatively, the customer-suit exception to the first-to-file rule applies. The Court will first address whether the first-to-file rule applies, or whether the customer-suit exception applies. The Court will then address whether a stay is appropriate in this case.

### A. First-to-File Rule

Fred's claims that the first-to-file rule applies in the instant case, making a stay of the action appropriate. The first-to-file rule is a "well-established doctrine that encourages comity among federal courts of equal rank." <u>Odyssey</u>

_Med., Inc. v. Augen Opticos, S.A. de C.V._, No. 10-2797, 2011 WL

2551191, at *2 (W.D. Tenn. June 27, 2011) (quoting _Certified_

_Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp._, 511

F.3d 535, 551 (6th Cir. 2007)) (internal quotation marks

omitted). "The rule provides that when actions involving nearly

identical parties and issues have been filed in two different

district courts, the court in which the first suit was filed

should _generally_ proceed to judgment." _Id._ (quoting _Certified_

_Restoration Dry Cleaning_, 511 F.3d at 551) (internal quotation

marks omitted). "Courts have identified three factors to

consider in determining whether to invoke the first-to-file

rule: '(1) the chronology of the actions; (2) the similarity of

the parties involved; and (3) the similarity of the issues at

stake.'" _Id._ at *3 (quoting _Clear!Blue, LLC v. Clear Blue,_

_Inc._, 521 F. Supp. 2d 612, 614–15 (E.D. Mich. 2007)).

### 1. Chronology

"In analyzing the [chronology] factor, 'the date that an

original complaint is filed controls,' not the date of an

amended complaint even if a party was only added in an amended

complaint after filing suit elsewhere." _Id._ at *3 (citation

omitted) (quoting _Zide Sport Shop of Ohio v. Ed Tobergte_

_Assocs., Inc._, 16 F. App'x 433, 437 (6th Cir. 2001)).

GeoTag filed its original Complaint for patent infringement

on September 13, 2011, in the Eastern District of Texas. (ECF

No. 80-1 at 12; see ECF No. 1 at 2; Compl., ECF No. 1, GeoTag,
Inc., 11-cv-00405-MHS (E.D. Tex. Sept. 13, 2011).) GeoTag filed
an amended Complaint, adding Fred's and over fifty other
defendants to the action, on October 25, 2011. (ECF No. 80-1 at
12; see ECF No. 1 at 2; Am. Comp., ECF No. 10, GeoTag, Inc., 11-
cv-00405-MHS (E.D. Tex. Oct. 25, 2011).) The Delaware action
involving Microsoft and Google – the purported "real parties in
interest" - was filed on March 1, 2011. (ECF No. 80-1 at 12;
see Compl., ECF No. 1, Microsoft Corp., 1:11-cv-00175-RGA.)

As a result, the first factor weighs in favor of Fred's, as
the Delaware action was filed six months before the original
GeoTag patent-infringement action and seven months before Fred's
was added as a defendant.

## 2. Similarity of Parties

Fred's argues that while it is not a party to the Delaware
action, it is a "peripheral party to GeoTag's overall patent
infringement suits." (ECF No. 80-1 at 12.) Fred's claims that
it "does nothing more than use and repackage Mapping Services
that are owned, operated, managed, and controlled by Google."
(Id.) Fred's supports this claim by illustrating that Fred's
store-locator webpage "states that the Mapping Service is
provided by Google and contains Google's own 'Terms of Use'"
which proves that the "Fred's store locator function acts as a
mere portal in a transaction between Google and the end user."

7

(Id. at 13-14.)  As a result, Fred's claims that Google is the
party that is relevant to the alleged infringement of the '474
Patent, and Fred's would "ha[ve] little documentation" relating
to GeoTag's claims.  (Id. at 14.)  Fred's asserts that "its
similarity to Google as a peripheral party [in the litigation
between Google and GeoTag] satisfies this element of the first-
to-file rule."  (Id. at 15.)

GeoTag disputes that Fred's and Google are "nearly
identical parties."  (ECF No. 89 at 16.)  GeoTag argues that
Fred's admitted that its accused store locator was developed in-
house at Fred's, not by Google.  (Id.; see Deats Dep., ECF No.
89-4, at 8:15-22.)  GeoTag also argues that its infringement
contentions assert that Fred's store locator, not Google's map,
is infringing the '474 patent.  (ECF No. 89 at 16.)  Finally,
GeoTag states that Fred's has "never contended that Google is
indemnifying Fred's for this litigation or that Google is the
real party in interest," that Fred's "never requested a stay in"
the Eastern District of Texas, and that "there are additional
accused instrumentalities [namely, the mobile locator
application and the job-finder locator] that Fred's does not
allege are provided by Google."  (Id. at 15-16.)

The Court finds that this factor weighs slightly in favor
of Fred's.  First, while the deposition testimony of Jim Deats,
Fred's Senior Vice President and Chief Information Officer,

states that the store locator was developed in-house and "put in place in the 2003-2004 timeframe" (Deats Dep., ECF No. 89-4, at 8:15-16, 22), in its Answer to GeoTag's Interrogatory regarding the "Accused Instrumentality," namely the store locator, Fred's stated,

> It is believed that Fred's first employed a basic store listing, with no map or geo-location function, in the 2003-04 timeframe; it is believed that this consisted of dropdown menu for states, which would then list stores for each state. In the first quarter of 2009, a store locator provided by Google was employed on the Fred's website. In July 2012, Fred's entered into a Google Maps API agreement with Google for a store locator.

(ECF No. 93-3 at PageID 4933.) While GeoTag may assert that Fred's original store locator infringed its patent, there is a substantial similarity between the issue of the Google-provided store locator after 2009 and the issues in the Delaware action.

Second, contrary to GeoTag's assertion that Fred's has not previously identified Google as a real party in interest, Fred's has previously identified Google as "having knowledge concerning the 'store locator' function of Fred's website" in its Rule 26(a)(1) Disclosures. (ECF No. 93 at 2; see ECF No. 93-2 at PageID 4911.) Further, in the same disclosures Fred's identified "documents related to third party providers of locators" as potential documents on which Fred's may rely in its defense. (ECF No. 93 at 2 (internal quotation marks omitted); see ECF No. 93-2 at PageID 4912-13.)

Third, GeoTag's claim that Fred's never filed for a stay of this case pending the outcome of the Delaware action is incorrect.  Fred's, along with forty-six other defendants, filed a Motion to Stay in the Eastern District of Texas on June 1, 2012.  (ECF No. 93-1; id. at PageID 4904); see Defs.' Mot. Stay, ECF No. 355, GeoTag, Inc., 11-cv-00405-MHS (E.D. Tex. June 1, 2012).)  As a result, Fred's has taken a consistent position that the action against it and the various other defendants should be stayed "in favor of [the] Microsoft and Google declaratory judgment action in Delaware." (ECF No. 93-1 at 1.)

Finally, the Court recognizes that GeoTag's argument that the other instrumentalities accused of infringing the '474 patent - namely the job locator and the mobile application – is a genuine issue relating to parties distinct from the Delaware action.  Fred's states that the "mapping function of the mobile application is powered by Google, and the application interfaces with Google's databases to display location information." (ECF No. 93 at 8 n.4.)  While the mobile locator is potentially a mobile version of the Fred's webpage's store locator, and therefore subject to the same arguments regarding Google's mapping feature, there is a genuine issue as to which company provided the job locator.  GeoTag relies on the deposition of Jim Deats, who testified that Sullivan Branding and CareerBuilders, LLC, provided Fred's the job-locator

functionality (Deats Dep., ECF No. 89-4, at 23:13-24:25), while Fred's states that the issue has been resolved by a settlement GeoTag reached with CareerBuilder releasing it from liability (ECF No. 93 at 7-8).

Reviewing the record, it appears that Deats asserted that Sullivan Branding was also a provider of the job locator. As a result, it is unclear whether the issue of liability as it regards the job locator will be completely resolved in the Delaware case. The Court agrees that resolution of the Delaware action will potentially address the store-locator function only and not the job-locator infringement contention specific to GeoTag's claim against Fred's.

In applying the first-to-file rule, "the parties and issues need not be identical[, r]ather, the crucial inquiry is whether the parties and issues substantially overlap." Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005) (citations omitted). GeoTag asserts that Fred's job-locator function infringes the '474 Patent. The Court finds, therefore, that the validity of the '474 Patent is a substantial issue in the instant case, which overlaps the same issue in the Delaware action. As a result, this factor weighs in favor of Fred's. While there is an issue of the source of the job-locator and the effect of the settlement between CareerBuilder and GeoTag, the more substantial issue of the

11

validity of the '474 Patent overlaps in the Delaware case and the instant case.

### 3. Similarity of the Issues

Fred's argues that the similarity of the issues in the instant action and the Delaware action make a stay in the instant case appropriate.  Fred's argues that the same patent is at issue in both cases; that Google is the "manufacturer, supplier, and host of the Mapping Services" used by Fred's allegedly infringing products, thereby making Google the real party in interest; and that as "Google controls the design and production of the Mapping Services at issue," it has an interest in defending its products against patent-infringement claims. (ECF No. 80-1 at 15-16.)

GeoTag argues that it "is not asserting that the Google mapping feature infringes the '474 patent in the Delaware litigation," therefore the issues are distinct.  (ECF No. 89 at 4.)  In the Delaware action, GeoTag's counterclaim states,

> GeoTag's claim of infringement of the '474 Patent against Google relating to the provision store locator services to any of its customers is based only upon Google's internal use of the inventions claimed by the '474 patent and is not based upon Google's sale or distribution of any store locator services to any third party, including any other person who has been sued by GeoTag for infringement of the '474 patent.

(GeoTag's Ans. & Countercl., ECF No. 36 ¶ 18, <u>Microsoft Corp.</u>, 1:11-cv-00175-RGA (D. Del. Feb. 13, 2012).)

12

As previously stated, in determining whether the first-to-file rule applies, the "issues need not be identical[, r]ather, the crucial inquiry is whether the . . . issues substantially overlap." <u>Fuller</u>, 370 F. Supp. 2d at 688 (citations omitted).

In the instant motion, it appears to the Court that although GeoTag is only claiming Google infringed the '474 patent through its "internal use" of the patent, the determination of the validity of the patent concerns a similar use of the patent by Fred's. In effect, a determination of validity or invalidity of Google's independent use of the '474 patent will likely have an effect on Fred's use of the patent. <u>See</u> <u>Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.</u>, 402 U.S. 313 (1971); <u>Abbott Labs. v. Andrx Pharms., Inc.</u>, 473 F.3d 1196, 1203 (Fed. Cir. 2007) (characterizing <u>Blonder-Tongue</u> as stating that "a defendant could plead estoppel if it 'identifies the issue in suit as the identical question finally decided against the patentee in previous litigation'" (quoting <u>Blonder-Tongue</u>, 402 U.S. at 333)). Fred's has also agreed to be bound by a finding of validity or invalidity for the '474 patent in the Delaware action should a stay be granted in the instant case. (ECF No. 80-1 at 8.) As a result, the Court finds that while there are other issues at stake in the instant case – namely the source of Fred's job locator and the store locator in use before the 2009 agreement with Google – the validity of the

'474 patent is of substantial importance to the instant case, such that a stay is appropriate under these circumstances.

Because the first-to-file factors weigh in favor of Fred's, the Court finds the rule applicable to the instant Motion. The Court, therefore, need not address the applicability of the customer-suit exception.

**B.    Factors for a Motion to Stay**

Recognizing that the first-to-file rule is not a "strict rule" and that this Court has the discretion to "dispense with [it] where equity so demands," Certified Restoration Dry Cleaning, 511 F.3d at 551 (quoting Zide Sport Shop, 16 F. App'x at 437) (internal quotation marks omitted)), the Court will also analyze Fred's Motion to Stay under the traditional factors. See supra Pt. II.

**1.    Unduly Prejudicial to the Non-Moving Party**

Fred's argues that staying the instant case will not unduly prejudice GeoTag as this case is at an early stage, a stay will resolve "major issues of validity, enforceability, and construction of the '474 patent," and will likely "simplify matters in this case." (ECF No. 80-1 at 7.) Fred's asserts that much of the relevant discovery in the instant case "will be in the possession of Google." (Id.) Staying the instant case, therefore, will allow GeoTag to "devote resources to the Delaware and Texas cases that would otherwise be strained by

14

litigating [the instant] case," and to pursue discovery in
Delaware instead of third-party discovery in Tennessee. (Id.)
Fred's also asserts that the stay will be "limited in duration,"
lasting only until a verdict is reached in the Delaware action,
which is scheduled for trial in December 2013, with the
potential for lifting the stay prior to a verdict, "depending on
the Delaware Court's forthcoming ruling on claim construction."
(Id. at 7-8.)

GeoTag argues that a stay will result in prejudice
resulting in a clear tactical disadvantage to GeoTag. GeoTag
argues that Fred's "never requested a stay in Texas and never
mentioned the relevance of Google," and is manipulating the
litigation process by transferring the case to this Court and
requesting a stay to delay the proceedings. (ECF No. 89 at 14-
15.) GeoTag contends that Fred's is taking inconsistent
positions by stating that "relevant discovery in this case will
be in the possession of Google," where it previously stated in
its Motion to Transfer that the accused instrumentality was
developed in-house and that the "prima facie sources of proof .
. . would be found at Fred's principal place of business in
Memphis, Tennessee." (Id. at 6, 15-16 (citing ECF No. 10 at
6).) GeoTag asserts that Fred's actions illustrate that it is
attempting to gain a tactical advantage by delaying the

litigation and thereby unduly prejudicing GeoTag. (Id. at 15-16.)

The Court finds that this factor weighs in favor of Fred's. First, the Court agrees that the stay sought in the instant action will likely be of limited duration, as trial in the Delaware action is set for December. Additionally, the Delaware court will issue a claim-construction ruling prior to the trial, which could also impact the instant case. While another district court's claim construction is not binding on this Court, and while there is no indication that the same terms construed by the Delaware court will be construed by this Court, it may be appropriate to give deference to the previous court's construction if the same terms are relitigated. See Parker-Hannifin Corp. v. Baldwin Filters, Inc., 724 F. Supp. 2d 810, 815-16 (N.D. Ohio 2010) (allowing a plaintiff to relitigate claims that were construed in a previous litigation, but giving the prior claim construction considerable deference).

Second, for the reasons stated supra, Part III.A.2., the Court finds GeoTag's assertion that Fred's "never requested a stay" is not correct. (See ECF No. 93-1; id. at PageID 4904); see also Defs.' Mot. Stay, ECF No. 355, GeoTag, Inc., 2:11-cv-405-MHS (E.D. Tex. June 1, 2012).)

Third, the record indicates that Fred's is not taking an inconsistent position regarding the involvement of Google in the

store-locator instrumentality.  As noted supra, Part III.A.2.,

the deposition testimony of Jim Deats stating that the store

locator was developed in-house and "put in place in the 2003-

2004 timeframe" (Deats Dep., ECF No. 89-4, at 8:15-16, 22), is

countered by Fred's Answers to GeoTag's Interrogatories stating

that after that in-house store locator was developed, Google

provided a store locator to Fred's in 2009.  (ECF No. 93-3 at

PageID 4933.)

Finally, while Fred's did state in its Motion to Transfer

Venue that relevant discovery would be located in Memphis,

Tennessee, Fred's has previously identified Google as "having

knowledge concerning the 'store locator' function of Fred's

website" in its initial disclosures.  (ECF No. 93 at 2; see ECF

No. 93-2 at PageID 4911.)  In the same disclosure, Fred's also

identified "documents related to third party providers of

locators" as potential documents on which Fred's may rely in its

defense.  (ECF No. 93 at 2; see ECF No. 93-2 at PageID 4912-13.)

GeoTag relies on the Court's decision in Lectrolarm Custom

Services, Inc. v. Vicon Industries, Inc., No. 03-2330-MA/A, 2005

WL 2175436 (W.D. Tenn. Sept. 1, 2005), to support its argument

that Fred's motion should be denied as "the requested stay would

result in this case not proceeding until two years after this

case was filed by GeoTag in October 2011." (ECF No. 89 at 16.)

GeoTag also argues Lectrolarm is applicable because both Fred's

17

and the defendant in <u>Lectrolarm</u> delayed filing their Motions to Stay. (<u>Id.</u>)

The Court finds that GeoTag's reliance on <u>Lectrolarm</u> is misplaced. The instant case is distinguishable from <u>Lectrolarm</u> because Fred's did not delay in seeking a stay pending the outcome of the Delaware action. Fred's filed for a stay in June of 2012. The issue of delay was central to the <u>Lectrolarm</u> Court's decision. The <u>Lectrolarm</u> Court stated,

> Finally, and most significantly, granting Vicon's motion to stay would impermissibly permit Vicon to abuse the reexamination process. The Defendants were aware of the allegedly invalidating prior art that is central to their request for reexamination long before they actually submitted the request to the PTO. . . . There is no reason that Vicon could not have requested a reexamination months or years earlier. . . . The easier course for the court would be to stay the action. That, however, would reward the Defendants' unexplained, and seemingly unexplainable, delay in filing the reexamination request.

<u>Lectrolarm</u>, 2005 WL 2175436, at *5. Accordingly, the Court finds that this factor weighs in favor of Fred's.

### 2. Simplifying the Issues

Fred's argues that a stay is appropriate because the issues in the instant case will be simplified by the resolution of the Delaware action. Fred's asserts that resolution of the Delaware action, because it concerns the validity of the same patent at issue in the instant case, may even render the entire case moot. (ECF No. 80-1 at 9.) Fred's also states that it agrees to be

bound by the Delaware court's finding of validity or invalidity of the '474 patent, which could thereby resolve the major claims against Fred's in the instant case.  (Id.)

GeoTag argues that the issues facing the Court will not be simplified by staying the instant action.  GeoTag argues that Fred's Motion to Stay is "predicated on Google providing Fred's store locator," yet GeoTag's infringement contentions "do not identify or rely on Google's mapping feature."  (ECF No. 89 at 11.)  GeoTag also argues that Fred's Motion to Stay does not address the other two locator-services GeoTag alleges infringe the '474 patent:  Fred's job locator and Fred's mobile locator. (Id. at 13.)

As stated, supra Parts III.A.2 and 3, while there is an issue as to which company provided the job locator, the validity of the '474 Patent is a substantial issue in both the Delaware action and the instant case.  Resolution of that issue will greatly simplify the issues before this Court, though it will not address every issue before the Court.  Considering judicial efficiency and economy, staying the instant case pending resolution of the Delaware action is likely to simplify a substantial issue before this Court.

Accordingly, the Court finds that this factor weighs in favor of Fred's.

### 3. Whether Discovery is Complete and a Trial Date Has Been Set

Fred's argues that the instant case is at an early stage in the litigation as no scheduling order has been entered. (ECF No. 80-1 at 11.) Fred's also contends that the Delaware action is at a much more advanced stage than the instant case, as a claim-construction ruling is forthcoming, the discovery period ended in April 2013, and the trial is scheduled for December 2013. (Id.) Fred's also asserts that the stay it seeks will be of "limited duration and could end as early as the Delaware Court's ruling" on the November 2012 claim-construction hearing. (Id.)

GeoTag argues that when viewed from the filing of the Amended Complaint and the proceedings in the Eastern District of Texas, the instant case is "not in its incipient stages as Fred's implies." (ECF No. 89 at 4.) Fred's notes that the action against Fred's was filed on October 25, 2011, and contends that prior to the transfer of the instant case to this Court, GeoTag had already filed infringement contentions, initial disclosures, interrogatories, requests for admission, produced documents, and prepared claim-construction briefing. (Id.) GeoTag notes that at the time of the preparation for the claim construction, Fred's was still a defendant in that action,

and while it was not the lead defendant, it had the opportunity "to request to submit additional briefing on claim construction issues" by December 18, 2012, which it did not do, nor did it claim that Google was the real party in interest. (Id. at 4-5.) GeoTag asserts that, "but for the transfer, GeoTag's case against Fred's would be more advanced than the Delaware litigation." (ECF No. 89 at 5.) GeoTag also notes that a claim-construction ruling has since been issued in the Eastern District of Texas case. (ECF No. 89 at 14.)

The Court finds this factor weighs slightly in favor of Fred's. While some discovery related to Fred's has commenced and the Eastern District of Texas has issued a claim-construction ruling, no scheduling order has been entered in this Court. Further, the Eastern District Court case concerned many more defendants than Fred's, therefore the issues before this Court are significantly narrower than the issues existent in the initial Eastern District of Texas case. As a result, the impending discovery will be tailored to more specifically address the issues presented by the severed case. Finally, although the Eastern District of Texas has issued its claim-construction ruling, a district court's claim-construction ruling is not binding on another district court. See Parker-Hannifin Corp., 724 F. Supp. 2d at 815-16. Further, there is no indication yet that the same claims that were construed by the

Eastern District of Texas will be construed in the instant case. As a result, the instant litigation is not at an advanced stage.

Additionally, the Delaware action is at an advanced stage. The Delaware court held its claim construction on November 12, 2012; fact discovery closed on April 1, 2013; and a trial is scheduled to start on December 9, 2013. (ECF No. 80 at 2; see Scheduling Order, ECF No. 42, Microsoft Corp., 1:11-cv-00175-RGA (D. Del. Feb. 27, 2012); Order on Stipulation to Extend Time for Discovery, ECF No. 173, Microsoft Corp., 1:11-cv-00175-RGA (D. Del. Nov. 5, 2012).)

The Court finds that the advanced status of the Delaware action weighs in favor of staying the instant case, as the Delaware court's determination of the validity or invalidity of the '474 Patent will have a substantial effect on the instant case.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that a stay of the instant case is appropriate in light of the Declaratory Judgment action involving the validity of the '474 Patent proceeding in the District of Delaware. The Court therefore orders that all proceedings — including Local Patent Rule disclosures and fact discovery — are hereby STAYED pending the outcome of the Delaware action. Either party may move to lift

the stay prior to a decision in the Delaware action for good cause.

IT IS SO ORDERED this 20th day of May, 2013.

/s/ Jon P. McCalla
CHIEF U.S. DISTRICT JUDGE